UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARENSBURG                                CIVIL ACTION

VERSUS                                    NO: 14-1391

NGM INSURANCE COMPANY ET AL.              SECTION: "J"(2)

### ORDER AND REASONS

Before the Court is the **Motion to Remand to State Court (Rec. Doc. 6)** filed by Plaintiff June Berry Darensburg and Defendants NGM Insurance Company (NGM) and Indoor Air Technologies, Inc. (Indoor Air)'s opposition thereto. (Rec. Doc.8) Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the motion should be **DENIED** for the reasons set forth more fully below.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

This litigation commenced when on December 11, 2013, Plaintiff filed a Petition for Damages in state court. (Rec. Doc. 1-2) In the petition, Plaintiff alleged that on January 15, 2013, she was stopped at a stop sign in Gretna, Louisiana, when

1

Defendant Rafael Rosario, Jr., rear-ended her while he was driving a vehicle owned by Defendant Indoor Air. Id. As a result, Plaintiff alleged that she suffered "multiple injuries to the body trunk, spine and extremities, including but not limited to her neck, right shoulder, arm, and low back with shooting pain into her buttock and leg." Id. at 2. Plaintiff sought damages for "physical pain and suffering, mental anguish, permanent disability, medical expenses past, present and future, loss of income past, present and future, loss of earning capacity, loss of enjoyment of life, property damage, towing, storage, . . . depreciation, loss of use, rental, [and loss of consortium]." See id. In accordance with Louisiana law, Plaintiff in her petition did not specify the numerical value of the claimed damages. See LA. CODE CIV. PROC. art. 893. The petition also did not include a statement that the amount sought was above or below the federal jurisdiction threshold.

On February 11, 2014, Defendants served interrogatories on Plaintiff in which Defendants requested an itemized, quantified damages figure. On February 17, 2014, Plaintiff's counsel sent Defendants' counsel an email containing the medical records and bills from the Ochsner emergency room; Plaintiff's treating neurosurgeon, Dr. Najeeb Thomas; and the Movement Science Center.

2

(Rec. Doc. 1-3, p. 1) The email also informed counsel for Defendants that Plaintiff was scheduled to undergo shoulder surgery with another doctor. Id. Plaintiff subsequently responded to Defendants' February 11th interrogatories on April 29, 2014. In her response, Plaintiff first objected to the request for a specification of all damages being sought, but did provide an itemization of medical expenses totaling $21,149.80. (Rec. Doc. 8, p. 2) Plaintiff did not thereafter supplement this response as her expenses grew. Id.

After Defendants received medical authorizations from Plaintiff on or about May 1, 2014, they sought medical records directly from Plaintiff's health care providers. Id. at 3. On May 21, 2014, Defendants for the first time received medical records that revealed the cost of the shoulder surgery, which came to more than $17,500. Id. When combined with the other medical bill records, the cost of Plaintiff's medical treatment rose to more than $44,000. Id. Consequently, Defendants filed their Notice of Removal on June 13, 2014. Id.

## LEGAL STANDARD

A defendant may remove to federal court any civil action filed in state court over which the federal court would have original jurisdiction. Mumfrey v. CVS Pharmacy, Inc., 719 F.3d

392, 397 (5th Cir. 2013)(citing 28 U.S.C. § 1332(a)). "A federal district court has subject matter jurisdiction over a state claim when the amount in controversy is met and there is complete diversity of citizenship between the parties." Id. The current amount in controversy requirement is $75,000. Id.

The procedure for removal of civil actions derives from 28 U.S.C. § 1446. Section 1446(b) provides that the notice of removal "shall be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading" if such initial pleading indicates that the civil action is removable. Id. § 1446(b)(1).  If it only becomes clear that the action is removable after receipt of "an amended pleading, motion, order or other paper," then the notice of removal "may be filed within 30 days [of] receipt" of that document. Id. § 1446(b)(3).

The United States Court of Appeals for the Fifth Circuit has held that the initial pleading triggers "the thirty-day removal period under [Section 1446(b)(1)] only where the initial pleading '*affirmatively reveals on its face* that the that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court.'" Mumfrey, 719 F.3d at 399 (quoting Chapman v. Powermatic, Inc., 969 F.2d 160, 163 (5th Cir. 1992)). The Fifth

4

Circuit has "specifically declined to adopt a rule which would expect defendants to 'ascertain[] from the circumstance[s] and the initial pleading that the [plaintiff] was seeking damages in excess of the minimum jurisdictional amount." Id. Thus, a plaintiff may not rely on a defendant's subjective knowledge from outside the initial pleading to render the action removable. See id. at 399-400. Indeed, the Fifth Circuit espouses a bright line rule under which Plaintiff must include in the initial pleading either the exact damages amount or "a specific allegation that damages are in excess of the federal jurisdictional amount" to trigger the removal clock. Id. at 399 (quoting Bosky v. Kroger Tex., LP, 288 F.3d 208, 210 (5th Cir. 2002)).

When the initial pleading does not affirmatively reveal that the case is removable, the removal clock is triggered only when an amended pleading or other paper subsequently enables a defendant to ascertain that the action is removable. See 28 U.S.C. § 1446(b)(3). To trigger the removal clock, however, the "information supporting removal contained in the other paper must be unequivocally clear and certain." Fortenberry v. Prine, No. 2:14-CV-56-KS-MTP, 2014 WL 2993668, at *2 (S.D. Miss. July 2, 2014)(quoting Bosky, 288 F.3d at 211)(internal quotation marks omitted). Other paper describing injuries and other damages that

5

seem likely to exceed the amount in controversy requirement, but which do not show unequivocally that the requirement is met, are insufficient to trigger the removal clock. See id. at *4.

## DISCUSSION

Plaintiff first seems to argue that her December 11, 2013, original Petition for Damages indicated that her damages were extensive enough to exceed the $75,000 threshold for federal jurisdiction, rendering the action removable. (Rec. Doc. 6-1, p. 2) As such, Defendants' Notice of Removal, filed more than thirty days after receipt of the petition, was untimely. Alternatively, Plaintiff argues that the February 17, 2014, email contained sufficient information regarding her injuries to allow Defendants to ascertain that the amount of damages would exceed $75,000, thereby triggering the removal clock. Id. at 2-6. In so arguing, Plaintiff relies in particular on the fact that the email revealed she was scheduled for shoulder surgery and was receiving treatment for spinal bulging. Id. at 2. Thus, Defendants would have had to file their Notice of Removal within thirty days of receipt of the email for the Notice to be timely. See id. at 4. Because they did not, Plaintiff argues that the removal was untimely and this Court lacks jurisdiction. Id.

Defendants argue that neither the initial Petition for

Damages nor any other paper since has made it "unequivocally clear and certain" that the amount in controversy requirement was met. (Rec. Doc. 8, p. 1) Consequently, the removal clock was never triggered, and the June 13, 2014, removal was timely. First, the initial Petition for Damages did not include a damages figure or an assertion that the amount sought exceeded the federal jurisdictional threshold. Id. at 2. Second, no document or other paper subsequently clarified that the amount in controversy exceeded the threshold. Id. Plaintiff's counsel's February 17, 2014, email did not trigger the removal clock because the attached medical bills did not reveal that damages exceeded the threshold. Id. at 5-6. The information therein regarding Plaintiff's injuries similarly did not trigger the removal clock, because if Defendants must interpret records or conduct quantum research to determine whether the threshold is met, then the amount in controversy is not clear and unequivocal. Id. at 6-7. Further, Plaintiff has not provided Defendants with an itemized and quantified list of all damages. Instead, in her interrogatories response of April 29, 2014, Plaintiff provided only a list of medical expenses totaling $21,149.80. Id. Finally, Plaintiff has refused to provide a settlement demand, which would be indicative of the amount in controversy. Id. at 3. Defendants

therefore insist that their Notice of Removal cannot be considered untimely.

Plaintiff's motion presents two issues. First, it requires the Court to examine whether Plaintiff's Petition for Damages revealed on its face that the action was removable. Second, it requires the Court to determine whether the February 17, 2014, email made it sufficiently clear that the damages figure in the civil action exceeded the federal jurisdictional threshold amount and, thus, triggered the removal clock. The Court will consider each in turn.

First, the Court finds that Plaintiff's original Petition for Damages did not "*affirmatively reveal*[] *on its face* that the that [Plaintiff sought] damages in excess of the minimum jurisdictional amount of the federal court." See Mumfrey, 719 F.3d at 399 (internal quotation marks omitted). Under the Fifth Circuit's bright line rule, Plaintiff must include in the initial pleading "a specific allegation that damages are in excess of the federal jurisdictional amount" to trigger the removal clock. Id. (quoting Bosky, 288 F.3d at 210). Plaintiff did not include such a statement. Therefore, Plaintiff's Petition for Damages did not trigger the removal clock.

Second, the Court finds that the February 17, 2014, email

did not make it unequivocally clear and certain that the action fulfilled the amount in controversy requirement. In Fortenberry, the United States District Court for the Southern District of Mississippi found that discovery responses indicating that a plaintiff was claiming at least $54,520 in damages and would claim more as medical bills mounted did not unequivocally show that the action would meet the federal jurisdictional threshold. 2014 WL 2993668, at *4. Similarly, here, the February 17, 2014, email, which revealed accrued expenses of less than $12,000 and suggested that those expenses would increase over time, did not unequivocally show that the amount in controversy requirement was met. (Rec. Doc. 1, p. 3) Although it is true that in Fortenberry, unlike here, the plaintiff "did not claim any mental or emotional injury, and it [was] not unequivocally clear that she claimed any future pain and suffering or future lost wages," Defendants could not have known upon receipt of the email that total damages would meet the federal threshold. See id. Plaintiff refused to provide Defendants with an estimate of her damages in excess of the limited medical expenses she revealed to them. Plaintiff should not be permitted to benefit from her vague (or nonexistent) responses to Defendants' several inquiries. See Johnson v. Ark. Freightways, Inc., 69 F.3d 536 (5th Cir. 1995). Because the

February 17, 2014, email did not make it unequivocally clear and certain that the action satisfied the amount in controversy requirement, it did not trigger the removal clock.[1] Consequently, the Court concludes that Defendants timely filed their Notice of Removal on June 13, 2014.[2]

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion to Remand to State Court* **(Rec. Doc. 6)** is **DENIED**.

New Orleans, Louisiana, this 13th day of August, 2014.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[1] For the same reasons, the Court agrees with Defendants that the April 29, 2014, interrogatory responses did not make it unequivocally clear and certain that the action satisfied the amount in controversy requirement.

[2] The Court is mindful that a contrary holding could encourage premature removals in the future–a result the Fifth Circuit in Chapman expressly sought to avoid. See Mumfrey, 719 F.3d at 399.